# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| D.S., by and through his parents and next friends, M.S. and R.S., *Plaintiff*, v. TRUMBULL BOARD OF EDUCATION, *Defendant*. | No. 3:18-cv-00163 (JAM) |

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, is a landmark federal statute that protects the rights of disabled children to receive a free and appropriate public education. One of the keys to ensuring that a public school district provides an appropriate education is the proper *evaluation* over time of the child's disabilities. The IDEA requires schools to conduct a range of comprehensive and periodic evaluations for each disabled child.

But parents don't always agree with the results of evaluations that a school may conduct. And so the IDEA allows for parents under certain circumstances to request that the school pay for an outside expert to conduct what is known as an "independent educational evaluation" (or, in IDEA-acronym-speak, an "IEE").

This case raises important questions about the right to a publicly funded IEE. In light of federal regulations that place limits on the scope of this right and when it must be asserted, I reach two conclusions that lead me to grant judgment in favor of the defendant Trumbull Board of Education and against plaintiff student D.S. and his parents who have filed this action on his behalf.

1

First, I conclude that a parent's statement of disagreement with a limited assessment does not entitle a parent to insist that the school district pay for an IEE to conduct additional testing or assessments beyond the scope of the assessment with which the parent has disagreed. Therefore, I conclude that the Hearing Officer in this case properly declined to require the Trumbull Board of Education to pay for a wide range of testing and assessments that were requested by the parents of D.S. and that were beyond the scope of the Functional Behavior Assessment with which the parents disagreed.

Second, in light of the general two-year time limitation that the IDEA imposes on a parent's right to seek a due process hearing when the parent believes that a school district has violated the student's rights under the IDEA, I conclude that a parent who seeks the benefit of a publicly funded IEE must lodge a disagreement and set in motion the parent's right to a due process hearing within two years of the school evaluation that the parent disputes. Therefore, I conclude that to the extent that the parents of D.S. now seek to re-frame their claim to be about their disagreement with a prior evaluation by the school district that took place more than two years before their request for a publicly funded IEE, the parents waited too long to seek to dispute this prior evaluation. In light of all these conclusions, I will grant the defendant Trumbull Board of Education's motion for summary judgment and deny plaintiff D.S.'s cross-motion for summary judgment.

## BACKGROUND

Before reviewing the facts involving D.S. and the dispute with the Trumbull school district, I will describe the relevant and somewhat complex legal framework. Beyond describing the IDEA in general, my focus will be on the important but limited role under the IDEA for independent educational evaluations.

*The IDEA and the right to an independent educational evaluation*

The IDEA requires public school districts to provide disabled children with a free and appropriate education (commonly referred to as a "FAPE"). *See Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017). When Congress enacted the IDEA, it identified multiple purposes for the law including "to ensure that all children with disabilities have available to them a free appropriate public education . . . designed to meet their unique needs," and "to ensure that the rights of children with disabilities and parents of such children are protected," as well as "to assess, and ensure the effectiveness of, efforts to educate children with disabilities." 20 U.S.C. § 1400(d)(1)(A)–(B), 1400(d)(4).

The IDEA requires school districts to create for each child an individualized education program (commonly referred to as an "IEP"). *See Endrew F.*, 137 S. Ct. at 994 (internal quotation marks omitted). An IEP is a written statement that sets out a child's performance, while establishing annual and short-term objectives and describing the specially designed instruction and services to enable the child to meet those objectives. *Ibid.* It functions as no less than "the centerpiece of the IDEA's educational delivery system." *Ibid.* (internal quotation marks omitted). The procedures for the drafting and development of an IEP "emphasize collaboration among parents and educators and require careful consideration of the child's individual circumstances." *Ibid.* (citing 20 U.S.C. § 1414); *see also T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014) (describing IEPs); *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (same).

The IDEA requires schools to conduct a series of evaluations of students who are or who may be disabled. At the outset, a school must conduct an "initial evaluation" in order "to determine if the child is a child with a disability." 20 U.S.C. § 1414(a)(1)(B). If the child has a disability, then the school must conduct periodic re-evaluations if the school determines that one

3

is warranted, or if a teacher requests one, or if the child's parent or guardian requests one. *Id.* § 1414(a)(2)(A)(i)–(ii).

What is an "evaluation" within the meaning of the IDEA? The IDEA does not itself define the term, but its implementing regulations provide that an "[e]valuation means procedures used in accordance with [34 C.F.R.] §§ 300.304 through 300.311 to determine whether a child has a disability and the nature and extent of the special education and related services that the child needs." 34 C.F.R. § 300.15.

At a minimum, a school district must conduct a comprehensive reevaluation at least once every three years (known as a "triennial evaluation") unless the parents and school agree that such a reevaluation is not necessary. 20 U.S.C. § 1414(a)(2)(B); 34 C.F.R. § 300.303(b); *Cooper v. District of Columbia.*, 77 F. Supp. 3d 32, 37 (D.D.C. 2014). A triennial evaluation requires the school district to review existing information about the child as well as to conduct a new round of additional testing to determine the child's abilities and needs. *See* 20 U.S.C. § 1414(b), (c); 34 C.F.R. §§ 300.304–305 (describing comprehensive reevaluation procedures); *see also James v. District of Columbia*, 194 F. Supp. 3d 131, 143 (D.D.C. 2016) (describing triennial reevaluation requirements); *Brennan v. Reg'l Sch. Dist. No. 1 Bd. of Educ.*, 531 F. Supp. 2d 245, 269 & n.25 (D. Conn. 2008) (same).

Although the IDEA places the burden on school districts in the first instance to conduct the necessary specialized evaluations of a disabled child, the "core" of the IDEA is a "cooperative process . . . between parents and schools" to jointly design each student's individualized education plan. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005). Accordingly, because parents are full "members of 'IEP teams,'" they "must be informed about and consent to [the school's] evaluations of their child under the Act." *Ibid.* (citing 20 U.S.C. §§ 1414(d)(1)(B), 1414(c)(3)).

In addition to what I have just described, the IDEA mandates more procedures to ensure that schools carry out their duty to provide a free and appropriate education while allowing for parental participation. *See* 20 U.S.C. § 1415(a). Among the required procedures are "[a]n opportunity for the parents of a child with a disability to examine all records relating to such child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child," as well as "*to obtain an independent educational evaluation of the child*" apart from the periodic evaluations that a school itself may conduct. *Id.* § 1415(b)(1) (emphasis added); *Schaffer*, 546 U.S. at 60.

Beyond this passing reference in the statute to an "independent educational evaluation," the IDEA does not specify when a parent is entitled to one. Nor does it say what role the findings of an IEE should play in terms of a school's ongoing duty to provide a free and appropriate education.

To fill this gap, the Department of Education has issued a regulation on the subject of IEE's. *See* 34 C.F.R. § 300.502 (Independent educational evaluation). The regulation defines an IEE to mean "an evaluation conducted by a qualified examiner who is not employed by the public agency responsible for the education of the child in question." *Id.* § 300.502(a)(3)(i).

The regulation further provides for a qualified right of a parent to obtain an IEE at public expense: "A parent has the right to an independent educational evaluation [IEE] at public expense if the parent disagrees with an evaluation obtained by the public agency." 34 C.F.R. § 300.502(b)(1); *see also* Conn. Agencies Regs. § 10-76d-9(a) ("A parent shall be permitted to obtain an independent educational evaluation, in accordance with the provisions of the IDEA.")

As the Supreme Court has explained, this right to a publicly funded IEE "ensures parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion." *Schaffer*, 546 U.S. at 60–61. Parents who disagree with a

5

school district's evaluation of their child "are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition." *Id.* at 61; *see also Phillip C. ex rel. A.C. v. Jefferson Cty. Bd. of Educ.*, 701 F.3d 691, 695–98 (11th Cir. 2012) (discussing purposes of and justification for requiring school district to pay for IEE notwithstanding lack of financial payment requirement in the IDEA statute).

Yet, as the Eleventh Circuit has observed, "[t]he parental right to an IEE is not an end in itself." *T.P. ex rel. T.P. v. Bryan Cty. Sch. Dist.*, 792 F.3d 1284, 1293 (11th Cir. 2015). That is because a school district is not obliged to accept or implement the findings of an independent expert. An IEE need only be "considered" by the school district to decide what services are necessary and consistent with its overarching obligation to provide a free and appropriate public education. *See* 34 C.F.R. § 300.502(c)(1); *Mr. P v. W. Hartford Bd. of Educ.*, 885 F.3d 735, 753 (2d Cir.), *cert. denied*, 139 S. Ct. 322 (2018).

The IDEA regulations go on to describe what procedure a school district must follow after a parent lodges a disagreement with a school district evaluation and makes a request for the school district to pay for an IEE. At that point, the burden shifts to the school district to do one of two things: (1) to honor the parent's request to pay for an IEE, or (2) to initiate a due process hearing before a hearing officer in order to prove that its evaluation with which the parent disagrees was appropriate. 34 C.F.R. § 300.502(b)(2). The school district is free to ask the parent why the parent disagrees with the school district's evaluation, but the school district may not require the parent to explain the basis for disagreement and may not unreasonably delay in either providing the IEE at public expense or filing for a due process hearing to defend the appropriateness of its own evaluation. *Id.* § 300.502(b)(4).

6

Even if the school district successfully defends the appropriateness of its evaluation at a due process hearing, the parents are free to have the child examined by an independent expert, provided that it is the parents who shoulder the cost of any examination. Regardless whether it is the school or the parents who pay for an IEE, the school must take into consideration the results of a properly performed IEE in deciding how to improve upon the student's individualized education plan. *Id.* § 300.502(b)(3) & (c)(1).

### *Background re D.S.*

D.S. is a sixteen-year-old student who lives with his parents in Trumbull, Connecticut. D.S. has multiple disabilities for which he receives special education and related services under the IDEA. Doc. #42 at 1. Since 2013, D.S. has attended therapeutic day programs at Cooperative Education Services (CES) in Trumbull and then Area Cooperative Education Services (ACES) in Hamden, Connecticut. *Id.* at 2.

D.S. was subject to a triennial evaluation in October 2014. *See* Doc. #39 at 8. In March 2016 and again in March 2017, the school district also conducted Functional Behavioral Assessments ("FBA") to identify the triggers for troublesome behavior by D.S., including punching, kicking, and hitting of property. Doc. #39 at 11 and 25; Doc. #42 at 8 (¶ 30). As the parties describe it, an FBA is "a process of gathering and analyzing data in an effort to determine what function an exhibited behavior may be serving for a child," in order to serve as a "foundation" for a "behavior intervention plan" (or "BIP"). *Id.* at 6 (¶¶ 19–21).

At a meeting with D.S.'s parents in March 2017, the school proposed—and the parents agreed to—a plan for another triennial reevaluation to take place in October 2017. Docs. #42 at 11, #46 at 5 (¶ 7). Two months later the parents requested another meeting in May 2017, and they then requested an IEE for more testing across a broad range of areas to include the following assessments:

7

1. A comprehensive functional behavioral assessment [] by a Board Certified Behavioral Analyst ("BCBA") who would also develop an appropriate behavioral intervention plan ("BIP");
2. A comprehensive psychoeducational assessment (including the BASC) by an evaluator trained in concussions and other brain injuries and is otherwise qualified to address possible cognitive impairment of the Student as a result of his head banging;
3. A comprehensive occupational therapy assessment;
4. A comprehensive speech & language assessment;
5. A comprehensive physical therapy assessment;
6. A comprehensive central auditory processing disorder assessment; and
7. A comprehensive assistive technology assessment.

Doc. #39 at 14–15; Doc. #28-1 at 3.

The school district initially denied all of the parents' IEE requests. Doc. #28-1 at 3. Instead, it proposed adding additional areas and assessments to its own upcoming triennial evaluation of D.S. that was scheduled for October 2017, including for central auditory processing, autism diagnostic observation schedule 2, fine motor, gross motor, and assistive technology assessments. Doc. #46 at 5 (¶ 9). According to the parents, "the Board agreed to amend the Student's triennial evaluation scheduled for October 2017 to include assessments in each of the areas requested by the Parents, albeit by evaluators employed and/or selected by the Board (and not by 'independent' evaluators, i.e., those selected by the Parents)." Doc. #28-1 a 3–4.

The parents, however, refused to consent to the school's undertaking these additional tests, despite their apparent desire for D.S. to be evaluated in all these areas. *Ibid.* The parents' counsel stated at oral argument before me that the parents refused the school's request to conduct additional assessments for fear that their consent to allowing the school to conduct more evaluations would moot their claim to an IEE.

Later, in August 2017, the school district modified its position, now to agree to pay for one of the parents' requested assessments—an FBA conducted by a BCBA (Board Certified

Behavior Analyst). Doc. #39 at 11–12. In the meantime, both the school district and the parents requested due process hearings in August 2017, and the two hearings were consolidated at the parents' request. Doc. #46 at 3. The consolidated hearing took place before an administrative hearing officer in October 2017. *Ibid.*

### *The Hearing Officer's decision*

In a final order dated December 15, 2017, the Hearing Officer (Melinda Powell) made three principal rulings. First, to the extent that the parents of D.S. sought an independent FBA by a BCBA to develop a BIP, the Hearing Officer concluded that this request was now moot in light of the school district's agreement to pay for this IEE. Doc. #46 at 10 (¶ 13), 11 (¶ 1).

Second, the Hearing Officer concluded that the most recent FBA that had been performed in March 2017 was not fully appropriate because it was insufficient to understand the nature of the causes of D.S.'s behaviors, in large part because it lacked a psychosocial assessment "to rule out autism spectrum disorder" as well as lacking the use of the BASC rating scale. Doc. #46 at 10 (¶ 14), 11 (¶ 2). Therefore, the Hearing Officer further granted the parents' request for an IEE at public expense for a psychosocial assessment and to an independent BASC as part of this IEE. *Id.* at 10 (¶ 14). The parties told me at oral argument that an independent FBA has since been completed.

Third, and most significantly for purposes of this ruling, the Hearing Officer otherwise denied the parents' request for an IEE at public expense to conduct multiple additional assessments that were outside the scope of what is subject to measurement by a functional behavior assessment of the type undertaken in March 2017. *See id.* at 11 (¶¶ 4–8) (denying requests for a comprehensive physical therapy evaluation, comprehensive assistive technology evaluation, comprehensive speech and language evaluation, comprehensive occupational therapy evaluation, and central auditory processing evaluation). The Hearing Officer agreed with the

9

parties "that the FBA performed in March 2017 was an 'evaluation' which triggers the right of the Parent to request an IEE," *id.* at 10 (¶ 12),[1] but reasoned that "there should be a connection between the type of IEE requested and the evaluation that has been conducted," *id.* at 10 (¶ 15). She "reject[ed] the Parent's argument that the Board's completion of a FBA opens the door to parental entitlement for *any* evaluation a parent may request." *Id.* at 10–11 (¶ 15) (emphasis in original). "Otherwise, the regulations which allow a Parent to request that the *Board* perform an evaluation, and the regulations concerning triennial reviews, which mandate that the Board perform updated evaluations, would be rendered superfluous." *Id.* at 11 (¶ 15) (citing 20 U.S.C. § 1414(a)(2)(A)(ii) and 34 C.F.R. § 300.303(a)(2)).

D.S. through his parents filed for review by this Court, and the parties have now cross-moved for summary judgment. The parents of D.S. seek to reverse the decision of the Hearing Officer to require payment for the IEE's requested by the parents. By contrast, the Trumbull Board of Education seeks to affirm the Hearing Officer's decision.

## DISCUSSION

Under the IDEA, if a parent disputes a hearing officer's decision following a due process hearing, the parent may seek review in federal district court. *See* 20 U.S.C. § 1415(i)(2)(A). The procedure is, in essence, an administrative appeal from the agency's determination. *See M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012). Although the Court must engage in an independent review of the administrative record and make a determination based on

---

[1] In view of the limited scope of a functional behavior assessment, it is an open question whether it constitutes an "evaluation" for purposes of the IDEA. *See In re Butte Sch. Dist. No. 1*, 2019 WL 343149, at *8–9 (D. Mont. 2019) (concluding that "[a]n FBA is not an 'evaluation' for purposes of the IDEA's evaluation procedures," because "an FBA is concerned only with a child's behavior" and not "comprehensively determining" qualities such as "a child's intelligence, academic performance, and physical ability" as is required to constitute an "evaluation" under §§ 300.304-300.311); *but see Harris v. D.C.*, 561 F. Supp. 2d 63, 67–68 (D.D.C. 2008) (FBA constitutes an "evaluation" under the IDEA). Because the Hearing Officer concluded without objection that the FBA constitutes an "evaluation" for purposes of the right to request an IEE, I conclude that the school district has waived any contrary argument for purposes of this action.

10

a preponderance of the evidence, the Court must also be "mindful that the role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed" and that "federal courts reviewing administrative decisions must give due weight to these proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 113 (2d Cir. 2007) (internal quotation marks and brackets omitted); *see also Endrew F.*, 137 S. Ct. at 1001–02 (noting deference owed to school district administrators); *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988) (noting deference owed to hearing officer).

The parents argue that the Hearing Officer wrongly denied their request for a comprehensive IEE that extended to their multiple requested assessments for comprehensive physical therapy, comprehensive assistive technology, comprehensive speech and language, comprehensive occupational therapy, and central auditory processing.[2] I do not agree with the parents for two reasons explained below. First, I conclude that the Hearing Officer did not err when she denied an IEE for additional assessments that the parents requested that were beyond the scope of the FBA. Second, to the extent that the parents attempt to re-frame their claim to base their right to an IEE on grounds of a disagreement with the comprehensive triennial evaluation of October 2014 rather than the limited FBA of March 2017, I conclude that they waited too long to dispute the October 2014 triennial evaluation.

---

[2] The parents' very lengthy briefing is confusing at times with respect to its characterization of errors by the Hearing Officer. At one point deep in the parents' briefing, they enumerate six different claims of error. Doc. #28-1 at 49–50. I understand the first five of these claims all to go to a single issue of whether the Hearing Officer erred by not requiring the Board to pay for an IEE to conduct the full range of assessments demanded by the parents. The last of the parents' claims (that the Hearing Officer should have ordered an independent FBA) is now moot in light of the parties' agreement that an independent FBA has now been conducted.

***Whether the Hearing Officer properly denied an IEE for assessments beyond the scope of the FBA with which the parents disagreed***

As the words of the IEE regulation make clear and as multiple courts within this District and elsewhere have recognized, the IDEA does not create a freestanding right to a publicly financed IEE upon parental demand. Instead, the right to a publicly financed IEE must be premised on an actual *disagreement* with an evaluation that the school district has conducted. *See* 34 C.F.R. § 300.502(b)(1); *Genn v. New Haven Bd. of Educ.,* 219 F. Supp. 3d 296, 317–18 (D. Conn. 2016) (school district "must be afforded the opportunity to conduct the initial evaluation with professionals satisfactory to the school *before* the Parent may disagree and request an independent evaluation"); *R.L. ex rel. Mr. L. v. Plainville Bd. of Educ.*, 363 F. Supp. 2d 222, 234 (D. Conn. 2005) (Droney, J.) (applying both federal and Connecticut law to conclude that parents do not have right to IEE at public expense where they desired it "as an additional source of information on [student's] program, not because they disagreed with any of the defendant's evaluations"); *see also P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 740 (3d Cir. 2009) (parents do not have right to IEE at public expense where parents arranged for IEE prior to when school district knew or should have known of the need for an evaluation and not as a result of a disagreement with school's evaluation); *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 275 (3d Cir. 2007) (parents do not have right to IEE at public expense where parents actually agreed with the school's evaluation); *Edie F. ex rel. Casey F. v. River Falls Sch. Dist.*, 243 F.3d 329, 335 (7th Cir. 2001) (parents do not have right to IEE at public expense where their disagreement was with the result of the child's individualized education program not with particular diagnosis or methodology of evaluation); *N.D.S. by & Through de Campos Salles v. Acad. for Sci. & Agric. Charter Sch.*, 2018 WL 6201725, at *5–*7 (D. Minn. 2018) (where parents request IEE to challenge obsolete evaluation, they are entitled to

due process hearing limited only to whether the evaluation was appropriate at the time it was completed; if parents wish for a publicly funded IEE with respect to their child's current condition, then they must allow the school district to conduct a current reevaluation and then request an IEE if they disagree).

The Hearing Officer correctly recognized that, because the right to a publicly funded IEE depends on the parents' disagreement with an existing IEE, there must necessarily be a connection between the evaluation with which the parents disagree and the independent evaluation which they demand be funded at taxpayer expense. After all, the right to a publicly funded IEE turns on the parents' disagreement with an evaluation that was actually done, not a parent's disagreement with an evaluation that was *not* done. The IEE regulation's requirement that there be a disagreement with an existing evaluation would be meaningless if a parent could lodge a "disagreement" with any particular evaluation as no more than a device to demand a publicly funded IEE for testing beyond the intended or proper scope of the evaluation with which the parents purportedly disagree.

This interpretation is reinforced by the language of the IEE regulation that allows a school district to file for a due process hearing so that it may show to the satisfaction of a hearing officer "that its evaluation is appropriate." § 300.502(b)(2). If a parent were entitled to demand an IEE to evaluate aspects of a child's disabilities that were not intended to be measured by the testing that was actually performed by the agency, then this provision of the regulation would be pointless, because the school district could scarcely hope to prove that its "evaluation" was "appropriate" if its adequacy is to be measured against goals outside the very scope of what the evaluation is designed and intended to measure.

Thus, for example, if the school district conducts an assessment to measure a student's eyesight (and assuming *arguendo* that this limited testing constitutes an "evaluation" for

purposes of the IDEA), a parent may "disagree" with the test results and request an independent eye exam at public expense. The parent, however, may not use the occasion of the school's decision to conduct an eye exam to demand that the public pay for a panoply of neurological, occupational, and behavioral evaluations by independent specialists. The words of the regulation that condition the right to a publicly funded IEE are not reasonably interpreted to create such a virtually limitless right. And if parents had such free-ranging rights to impose financial obligations on schools every time that a school district conducts a limited assessment of a disabled child, then schools would understandably be reluctant to conduct any interim testing or assessment beyond the bare statutory minimum for fear of significant financial liability from parental demands for publicly funded IIEs.

The parents insist that the broad range of additional testing they proposed was all relevant to the FBA conducted by the school, because the proposed testing could shed light on some aspect of D.S.'s behavior. Doc. #28-1 at 34–48. But the parents do not show that these additional assessments were within the scope of what is intended to be measured by a functional behavior assessment, and I otherwise defer to the school district's and Hearing Officer's conclusion that carefully concluded that some of what the parents requested was within the proper scope of the FBA but that most of it was not. "The district court's determination of the persuasiveness of an administrative finding must also be colored by an acute awareness of institutional competence and role." *M.H.*, 685 F.3d at 244.

It bears repeating that the issue here is not the right of parents to have an independent evaluation conducted of their child. It is the right of parents to have it provided at public expense. As the IEE regulation makes clear, *see* § 300.502(b)(3) & (c), parents are free to fund their own independent evaluation and to bring the results to the attention of the school district in the formulation of an individualized educational program.

14

Moreover, if the parents here were correct that they have a right to demand a publicly financed IEE for additional testing and assessments that are unrelated to a disagreement with an evaluation that the school district has performed, this would undermine the basic statutory scheme of the IDEA for the conduct of evaluations. The IDEA contemplates that a school district will have an opportunity in the first instance to conduct its own evaluations (subject of course to the consent of the parents as IEP team members) and that only then, if the parents disagree with the evaluation, should a school face the prospect of either having to pay for an independent evaluation or having to defend its evaluation as appropriate at a due process hearing.

Of course, if a school district refuses to conduct an evaluation that the parent requests, *see* 34 C.F.R. § 300.303(a)(2) (providing for right of parent to request a reevaluation), then a parent is free to file for a due process hearing to insist that the school district's failure to conduct a reevaluation as requested by the parent is inconsistent with the student's IEP or the school district's overall duty to provide a free and appropriate education. *See, e.g., Scott ex rel. C.S. v. New York City Dep't of Educ.*, 6 F. Supp. 3d 424, 437 (S.D.N.Y. 2014) (challenge to school district's failure to conduct adequate evaluations). What a parent may not do, however, is circumvent the right of the school district to consider whether to conduct its own evaluation by insisting that the school district must pay for an independent evaluation in the first instance. *See, e.g.*, *N.D.S.*, 2018 WL 6201725, at *6 (discussing how statutory scheme of IDEA does not allow parents to use the IEE process to avoid a school's right to conduct its own evaluation before having an opportunity to respond to a parent's disagreement with the evaluation and a demand for a publicly funded IEE). That is precisely what the parents have sought to do here, by demanding a comprehensive IEE while refusing consent to the school district's offer to conduct the same assessments. Doc. #28-1 at 3–4 (parents' briefing noting that "the Board agreed to amend the Student's triennial evaluation scheduled for October 2017 to include assessments in

each of the areas requested by the Parents, albeit by evaluators employed and/or selected by the Board (and not by 'independent' evaluators, i.e., those selected by the Parents)"). In short, the Hearing Officer correctly concluded that the parents' disagreement with the FBA of March 2017 did not entitle them to a publicly funded IEE for the additional requested assessments that were beyond the scope of the FBA.

### *Whether the parents' challenge to the triennial evaluation is untimely*

There is little doubt that a triennial evaluation of the type that was conducted for D.S. in October 2014 would qualify as an "evaluation" under the IDEA and that the range of testing proposed by the parents in May 2017 would be well within the scope of a proper triennial evaluation in light of the very comprehensive nature of such an evaluation. *See* 34 C.F.R. §§ 300.304–300.311.[3] In light of all this, it is not surprising that the parents now attempt to re-frame their "disagreement" to be not so much with the FBA of May 2017 but with the earlier triennial evaluation that was performed in October 2014.[4] This argument, however, fails for yet a different

---

[3] For this reason, the parents misplace their reliance on certain Department of Education policy letters that explain a parents' right to a publicly funded IEE. *See Letter to Carroll*, U.S. Department of Education Office of Special Education and Rehabilitative Services (2016), https://sites.ed.gov/idea/files/policy_speced_g uid_idea_memosdcltrs_carroll-iee-policy.pdf; *Letter to Baus*, U.S. Department of Education Office of Special Education and Rehabilitative Services (2015), https://www2.ed.gov/policy/speced/guid/idea/memosdcltrs/acc-14-012562r-baus-iee.pdf. These letters make clear that if a child is subject to a *comprehensive* evaluation as defined under 34 C.F.R. §§ 300.304-300.311, but the school district neglects to assess the child in a particular area, then a parent may validly disagree with the evaluation for lack of required completeness and request an IEE. These agency letters, however, do not go further to state that if a child is subject to *limited* testing or assessment (such as a FBA), then the door is open for parents to demand a publicly funded IEE for assessment and testing beyond the scope of the limited testing and assessment that was done. In any event, because the regulations are not ambiguous, there is no basis for judicial deference to these letters as authoritative agency interpretations to the extent they are contrary to what the regulations provide. *See, e.g., Christensen v. Harris Cty.*, 529 U.S. 576, 587–88 (2000).

[4] While it is not surprising that the parents now try to re-frame their "disagreement" as a disagreement with the triennial evaluation of October 2014 (rather than the FBA of March 2017), what is surprising is that the parents did not simply consent to and wait for the school district to conduct its triennial evaluation that was scheduled for October 2017 (or even request that the school district accelerate this evaluation). Instead, as noted above, the parents strategically *withdrew* their consent to additional testing proposed by the school district for the October 2017 evaluation. For purposes of their due process hearing and this litigation in general, the parents would be in a far different and stronger position had they consented to a broad range of testing for the October 2017 triennial evaluation and then asserted their right to a comprehensive IEE if they disagreed with the substance of the school district's comprehensive evaluation. *See T.P. ex rel. T.P. v. Bryan Cty. Sch. Dist.*, 792 F.3d at 1293 n.15 (noting parents' right to request an IEE following a triennial evaluation). In any event, because of the parents' confounding choice to withdraw their consent to a proper and comprehensive triennial reevaluation in October 2017, I cannot

reason: the parents waited too long to "disagree" with and challenge the triennial evaluation of October 2014.

The IDEA prescribes a two-year limitation within which a parent must lodge a complaint to seek a due process hearing. *See* 28 U.S.C. §§ 1415(b)(6) & § 1415(f)(3)(C); 34 C.F.R. § 300.511(e). As the Second Circuit has recently noted, "a Due Process Hearing is limited to complaints about actions that the complainant knew of or should have known of within two years of the date that the hearing is requested." *Mr. P v. W. Hartford Bd. of Educ.*, 885 F.3d at 747 n.7; *see also Avila v. Spokane Sch. Dist. 81*, 852 F.3d 936 (9th Cir. 2017)*; G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601 (3d Cir. 2015); *N.D.S.*, 2018 WL 6201725, at *3.

Far more than two years elapsed between the triennial evaluation in October 2014 and the parents' notice of disagreement and request for an IEE in May 2017, as well as their filing of a request for a due process hearing in August 2017. Because the record does not disclose any grounds to suggest that the parents would not or should not have known of grounds to disagree with the triennial evaluation of October 2014 soon after its completion, the IDEA's internal statute of limitations precludes the parents from basing their claim of disagreement on the triennial evaluation of October 2014.[5]

The parents insist that "the IDEA permits parents to request an IEE any number of years – even 100 years – after the Board's last evaluation of the Student." Doc. #45 at 7. Maybe so. But the relevant issue is that the IDEA imposes a two-year limit on when a complaint for a due

---

conclude at this time that the parents' challenge to the Hearing Officer's decision relating to the FBA of March 2017 has been mooted by subsequent evaluation results. *See id.* at 1293 (dismissing as moot challenge to failure to fund IEE where additional testing by the school district was due and would supersede the evaluation subject to disagreement by parents).

[5] Although the parents argue that the Board has somehow waived its right to rely on any statute of limitations, the parents' briefing concedes that the Board raised the issue in briefing before the Hearing Officer. Doc. #40 at 4-5. The parents were on ample notice of the Board's position that they could not base a request for an IEE on an evaluation that was conducted outside the two-year time limit provided for the filing of a due process complaint under the IDEA.

process hearing must be filed. If the parents disagreed with the triennial evaluation of October 2014, they should have timely stated any such disagreement and pursued any due process hearing for any denial of an IEE at public expense within two years of the triennial evaluation.

I reject as inconsistent with common sense and the statutory scheme the parents' argument that they could wait however many years or decades they wished to lodge their disagreement with the triennial evaluation and then wait yet two more years before seeking a due process review of the school's denial of a publicly financed IEE. This rule would do nothing for the child and redound only to the benefit of perpetuating pointless litigation.

The parents further contend that any statute of limitations in the IDEA is not the proper one to apply to an IEE request in Connecticut. They argue that the IDEA statute of limitations applies only if there is no applicable state law, *see* 34 C.F.R. § 300.511(e), and that "Connecticut has a state law that *arguably* applies, G.S. §10-76-h." Doc. #45 at 8 (emphasis added); Conn. Gen. Stat. §10-76-h ("A party shall have two years to request a hearing from the time the board of education proposed or refused to initiate or change the identification, evaluation or educational placement.").

By its terms, the Connecticut statute cited by the parents does not purport to regulate the time limit when a parent must file for a due process hearing to contest the failure of a school district to pay for an IEE, much less does it allow for a parent to wait some indefinite number of years before lodging a disagreement with a school district's evaluation. Moreover, the federal IDEA regulations require that, in order to displace the federal two-year rule, the State must have no less than an "explicit time limitation" to request a due process hearing, 34 C.F.R. § 300.511(e). Despite the parents' equivocal claim that the Connecticut statute "arguably" applies, the Connecticut statute does not *explicitly* regulate the time to seek a due process hearing for a violation of rights relating to the failure to provide a publicly financed IEE. Connecticut

regulations otherwise make clear that the provisions of the IDEA govern when a Connecticut parent may obtain an IEE at public expense. Regulations for Connecticut State Agencies ("R.C.S.A.") §10-76d-a ("A parent shall be permitted to obtain an independent educational evaluation, *in accordance with the provisions of the IDEA*.") (emphasis added).

At oral argument, the parents insisted that any IEE request is *always* timely because evaluations are inherently open-ended and continuous, such that every single school day—in some ethereal sense—constitutes a new "evaluation" with which a parent might decide to lodge a disagreement. This argument runs contrary to the IDEA's specialized regulatory definition of the term "evaluation," *see* 34 C.F.R. § 300.15, as well as contrary to the terms of the IEE regulation that reference evaluations as discrete occurrences that the school district has "obtained" and "conducts." 34 C.F.R. § 300.502(b)(1) & (b)(5). Moreover, in view that the IEE regulation allows for parents to seek an IEE at public expense "each time the public agency conducts an evaluation with which the parent disagrees," *id.* § 300.502(b)(5), the parents' every-day-is-a-new-evaluation argument would lead to an untenable conclusion that parents have rights to demand that the public pay for a new IEE with the dawn of every school day.

In short, the parents waited too long to "disagree" with or challenge the October 2014 triennial evaluation. Accordingly, their disagreement with the October 2014 triennial evaluation does not furnish a basis for a publicly funded IEE.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is GRANTED (Doc. #25), and plaintiff's motion for summary judgment (Doc. #28) is DENIED.

It is so ordered.

Dated at New Haven this 15th day of February 2019.

                                                /s/ *Jeffrey Alker Meyer*
                                                Jeffrey Alker Meyer
                                                United States District Judge